O

# United States District Court
# Central District of California

| | |
|---|---|
| FOREVER 21, INC., <br>       Plaintiff, <br>   v. <br> NATIONAL STORES INC., *et al.*, <br>       Defendants. <br><br> ULTIMATE OFFPRICE, INC., <br>       Counterclaimant, <br>   v. <br> FOREVER 21, INC., and DOES 1-10, <br>       Counter-Defendants. | Case No. 2:12-cv-10807-ODW(JCGx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS [74] AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE COUNTERCLAIMS [73]** |

## I.   INTRODUCTION

Before the Court are two motions filed by Plaintiff and Counter-Defendant Forever 21. The first is a Motion to Dismiss Defendant and Counterclaimant Ultimate Offprice, Inc.'s Counterclaims. (ECF No. 74.) The second is a Motion to Strike Counterclaims pursuant to California's Anti-SLAPP statute and the litigation

privilege. (ECF No. 73.) Forever 21 initiated this action for trademark infringement and unfair competition, alleging that certain retailers are impermissibly selling garments bearing Forever 21 marks. Ultimate was added as a defendant in the First Amended Complaint ("FAC"). Forever 21 also added a breach of contract claim against Ultimate based on a settlement agreement between the parties in a prior lawsuit before this Court. Ultimate then filed five counterclaims against Forever 21, which are premised on that prior lawsuit as well. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss Counterclaims, and **GRANTS IN PART** and **DENIES IN PART** the Motion to Strike Counterclaims.[1]

## II. FACTUAL BACKGROUND

The present Motions involve familiar parties to this Court. Forever 21 and Ultimate were on opposite sides of the courtroom in a very similar case not long ago. Forever 21 is a retailer of fashion apparel and accessories. Ultimate is in the business of buying and selling closeout garments—items that are leftover, returned, or cancelled—in the secondary market.

The first action involving these parties was filed on July 23, 2010. (*Forever 21, Inc. v. Ultimate Offprice, Inc.*, No. 10-cv-5485-ODW (JCGx), ECF No. 1.) Forever 21 sued Ultimate for trademark infringement and unfair competition, asserting that Ultimate had resold Forever 21 garments without authorization and without properly removing the Forever 21 marks. (*Id.*) The case settled and this Court entered a Final Judgment and Permanent Injunction on October 11, 2011. (*Id.* at ECF No. 35.) Ultimate filed a Satisfaction of Judgment on March 6, 2013. (*Id.* at ECF No. 37.)

The present action was filed on December 18, 2012, against a single Defendant—National Stores, Inc. (ECF No. 1.) The Complaint contained five

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

claims relating to trademark infringement and unfair competition. (*Id.*) Forever 21 alleges that on October 19, 2012, investigators purchased unauthorized Forever 21 garments from various outlets owned and operated by National. (FAC ¶¶ 36–39.) The case was initially assigned to a different judge here in the Central District of California.

According to Forever 21, National revealed that Ultimate was the source of the allegedly infringing garments. (Pham Decl. ¶ 5, Ex. C.) In response, Forever 21 filed a Motion for Contempt in the previous action, arguing that Ultimate was violating the Final Judgment and Permanent Injunction issued in that case. (*Forever 21, Inc. v. Ultimate Offprice, Inc.*, No. 10-cv-5485-ODW (JCGx), ECF No. 40.) On September 3, 2013, this Court denied the Motion for Contempt. (*Id.* at ECF No. 47.) The Court found that Forever 21 did not meet its burden of establishing by clear and convincing evidence that Ultimate failed to "substantially comply with a reasonable interpretation" of the Permanent Injunction. (*Id.* at ECF No. 47.)

On September 11, 2013, after the contempt motion was denied, Forever 21 filed the FAC naming several new Defendants including Ultimate. (ECF No. 35.) In addition to the trademark-infringement and unfair-competition claims applying to all Defendants, Forever 21 added a claim for breach of contract against Ultimate. (*Id.*) Forever 21 alleges that Ultimate has continued to sell counterfeit and unauthorized Forever 21 garments in violation of the parties' Confidential Settlement Agreement entered into in the previous action. (FAC ¶¶ 98–101.) On October 11, 2013, Ultimate responded to the FAC by filing five counterclaims against Forever 21 for (1) breach of contract, (2) declaratory relief, (3) unfair competition, (4) rescission, and (5) fraud. (ECF No. 62.)

Forever 21 filed the present Motion to Strike Counterclaims and Motion to Dismiss Counterclaims on November 12, 2013. (ECF Nos. 73, 74.) On November 24, 2013, Ultimate filed a single Opposition in response to both Motions. (ECF

No. 78.) Forever 21 filed a single Reply on December 2, 2013. (ECF No. 82.) On December 17, 2013, after the Motions were fully briefed, the entire action was transferred from the originally assigned judge to this Court for all further proceedings. The late transfer was due in large part to the fact that a Notice of Related Cases had not been timely filed by any party in the case. This Court took both Motions under submission on January 28, 2014.

### III. LEGAL STANDARD

**A. Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when

"the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.  Rule 9(b)**

Fraud pleadings are subject to an elevated standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Accordingly, when suing more than one defendant, a plaintiff cannot "merely lump multiple defendants together" but rather must differentiate the allegations and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65.

**C.  Anti-SLAPP Motion to Strike**

California's anti-SLAPP statute allows defendants in courts applying California substantive law to make a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (concluding that the twin aims of the *Erie* doctrine "favor application of California's anti-SLAPP statute in federal cases"). An act qualifies for protection under this statute if it falls within one of four categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding

authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest[;] or (4) any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

In considering an anti-SLAPP motion, a court must engage in a two-step process. First, the court determines whether the defendants have made a prima facie showing of whether the plaintiff's claims arise from a protected act under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (2005). To make this determination, the court looks to any pleadings or affidavits that state facts supporting or refuting the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003).

If the defendant establishes this prima facie showing, the burden then shifts to the plaintiff to demonstrate "a probability that [he] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiff must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts [that] sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiff fails to make this showing by a preponderance of the evidence, the court must grant the motion to strike and award the prevailing defendant his or her attorney's fees and costs. *Ingles*, 129 Cal. App. 4th at 1061–62; Cal. Civ. Proc. Code § 425.16(c)(1).

## IV. DISCUSSION

A claim does not arise from the mere fact of being sued. Nevertheless, as far as the Court can tell, four of Ultimate's counterclaims seek relief simply because Forever

21 has sued Ultimate. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Forever 21's Motion to Dismiss, and **GRANTS IN PART** and **DENIES IN PART** Forever 21's Motion to Strike. The Court analyzes the two Motions separately.

### A. Motion to Dismiss

Forever 21 moves to dismiss four of Ultimate's counterclaims for breach of contract, unfair competition, rescission, and fraud. Forever 21 argues that the counterclaims should be dismissed for failure to state a claim as a matter law or, in the alternative, for failure to meet the fraud pleading standard under Rule 9(b). On the other hand, Ultimate contends that this Court should deny the Motion to Dismiss because Forever 21 is misconstruing the allegations in the counterclaims.

#### 1. Breach of Contract

Ultimate's first counterclaim is for breach of contract. (ECF No. 62 ¶¶ 6–13.) The contract is the Confidential Settlement Agreement entered into by Forever 21 and Ultimate in the previous action. (*Id.* ¶¶ 6–7.) Forever 21 allegedly breached the Confidential Settlement Agreement by "bringing Ultimate into this action, rejecting the release [in the Confidential Settlement Agreement] and seeking enforcement of the Settlement Agreement in this Court." (*Id.* ¶ 11.) The Court finds that these allegations do not amount to breach of contract as a matter of law. The Court fails to comprehend how a breach-of-contract claim can arise from the mere fact that Forever 21 first sued Ultimate for failure to comply with the terms of the contract. The allegations in Ultimate's breach-of-contract claim are the proper province of its answer and affirmative defenses to Forever 21's claims. The allegations, if proven, may support a finding of nonliability with regard to Forever 21's claims, but do not support a breach-of-contract claim on their own. Put simply, a breach-of-contract claim does not arise from being sued for breach of the very same contract. Moreover, if the Confidential Settlement Agreement releases Ultimate from its allegedly

/ / /

infringing activities, that would serve as an affirmative defense to Forever 21's intellectual-property claims.

Ultimate also argues that its breach-of-contract claim is premised on Forever 21 bringing its breach-of contract claim before the wrong court. But this is simply not true. The previous action that resulted in the Confidential Settlement Agreement was heard in the Central District of California, and allegedly requires that enforcement of the contract be heard in the same court. Forever 21's FAC in this action was filed in the Central District of California. Therefore, Forever 21 is seeking enforcement of the Confidential Settlement Agreement in the same court—the Central District of California. It is the Court's job to assess whether the matter should be heard before the same judge. Regardless, Ultimate's contention is now moot since this action has been transferred to this Court for all further proceedings.

For the reasons discussed above, the Court **DISMISSES WITH PREJUDICE** Ultimate's counterclaim for breach of contract.

### 2. Unfair Competition

Ultimate's third counterclaim is for unfair competition under the common law and California Business and Professions Code section 17200 *et seq*. ("UCL"). (ECF No. 62, at ¶¶ 18–24.) Ultimate's counterclaim incorporates the allegations contained within its breach-of-contract claim. (*Id.* ¶ 18.) Ultimate then alleges that Forever 21's claims in this action are "unfair in that they are immoral and unethical and substantially injurious to consumers and threaten to harm competition." (*Id.* ¶ 21.) According to Ultimate, Forever 21 has also committed fraud based on unspecified representations by Forever 21 in connection with the Confidential Settlement Agreement and Final Judgment in the prior action. (*Id.* ¶¶ 21–22.) Based on the allegations, the Court once again finds that the claim is premised only on the fact that Forever 21 has filed claims against Ultimate in this case. Moreover, the allegations are merely a repackaged version of Ultimate's defective breach-of-contract claim. Therefore, Ultimate's unfair-competition claim also fails as a matter of law.

While a breach-of-contract claim may form the predicate for a UCL claim, the conduct constituting the breach must also be independently unlawful, unfair, or fraudulent. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). Here, the conduct that Ultimate alleges as a breach of the Confidential Settlement Agreement is Forever 21's filing of the claims against Ultimate in this action. There is nothing unlawful, unfair, or fraudulent about Forever 21 seeking redress for alleged infringement of intellectual-property rights or enforcement of a contract. Moreover, the purported fraudulent representations that Ultimate alleges in its unfair-competition claim are merely the contents of the Confidential Settlement Agreement and Final Judgment. Ultimate only alleges that these representations are false because Forever 21 has now filed suit against Ultimate. Once again, Ultimate's allegations constitute defenses to Forever 21's claims and nothing more. If the Confidential Settlement Agreement and Final Judgment bar Forever 21's claims in this action, then Ultimate will be found not liable. Forever 21's lawsuit does not alone give rise to reciprocal claims from Ultimate.

Accordingly, the Court **DISMISSES WITH PREJUDICE** Ultimate's counterclaim for unfair competition.

### 3. Rescission and Fraud

Ultimate's third and fourth claims are for rescission and fraud. (ECF No. 62, at ¶¶ 25–36.) Rescission is a remedy and not a separate claim. *See* Cal. Civ. Code § 1689(b). But the pleading makes clear that Ultimate seeks rescission related to Forever 21's allegedly fraudulent conduct, so the Court addresses these two claims together. Ultimate alleges in its counterclaims that counsel for Forever 21 in the previous action represented that Ultimate would not be prevented from purchasing apparel bearing Forever 21's marks. (ECF No. 62, at ¶ 26.) Instead, Ultimate alleges that the settlement only prevented Ultimate from selling garments without first ablating the Forever 21 marks. (*Id.*) Nevertheless, according to Ultimate, that

///

representation from Forever 21 was false as demonstrated by Forever 21's actions in filing suit against Ultimate in this case. (*See id.* ¶¶ 27–28, 33–34, 36.)

While not a model of pleading perfection, the Court finds that Ultimate has sufficiently laid out a claim for fraud. In particular, the Court finds that Ultimate has pleaded a claim for promissory fraud. *See* Cal. Civ. Code § 1572(4); *Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation that may be actionable fraud.") Here, according to Ultimate, Forever 21's counsel promised to adhere to the alleged terms of the contract and allow Ultimate to sell Forever 21 garments as long as the marks were ablated. But Ultimate alleges that the present lawsuit demonstrates that Forever 21 never intended to perform on the contractual promise.

The Court also finds that Ultimate has just barely met the heightened pleading requirements of Rule 9(b). There are sufficient allegations of who, what, when, and how the allegedly fraudulent conduct occurred. Moreover, the Court distinguishes Ultimate's fraud claim from the allegations of fraudulent conduct in the breach-of-contract and unfair-competition claims because, unlike those claims, the alleged fraud here would negate the Confidential Settlement Agreement's validity.

For these reasons, the Court **DENIES** Forever 21's Motion to Dismiss with respect to Ultimate's fraud claim and remedy of rescission. But Ultimate's allegations of fraud and rescission are still subject to Forever 21's Anti-SLAPP Motion and are less successful under the Court's analysis of that Motion below.

**B.      Motion to Strike**

In the Motion to Strike, Forever 21 argues that all of the counterclaims, with the exception of the declaratory relief claim, should be stricken pursuant to California's Anti-SLAPP statute and the litigation privilege. In addition, Forever 21 contends that the claim for declaratory relief should be stricken as redundant under Federal Rule of Civil Procedure 12(f). Ultimate opposes the Motion by arguing in general terms that

its counterclaims do not curtail Forever 21's free-speech rights, and that there is more than a reasonable probability that it will prevail on the counterclaims.

A court must address an anti-SLAPP motion even when the claims have been dismissed on other grounds because the anti-SLAPP statute mandates that attorneys' fees and costs be awarded to the prevailing party. *See Vess*, 317 F.3d at 1110; *Collins v. Allstate Indem. Co.*, 428 Fed. App'x 688, 690 (9th Cir. 2011). Thus, even though the Court has dismissed some of Ultimate's counterclaims under Rule 12(b)(6), the Court must still consider those claims in the context of this anti-SLAPP motion.

### 1. Protected Activity

The Court engages in a two-step process in analyzing an anti-SLAPP motion. The first step is to determine whether Ultimate's counterclaims arise from activity protected by the anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16(e); *Ingles*, 129 Cal. App. 4th at 1061. As discussed above with respect to the Motion to Dismiss, the alleged acts by Forever 21 in the counterclaims involve the Confidential Settlement Agreement in the prior action and the filing of the FAC in this case. The Court finds that these activities are protected under the anti-SLAPP statute.

In terms of filing the FAC, "[t]he filing of a complaint fits the definition of an act in furtherance of a person's right to petition." *Mundy v. Lenc*, 203 Cal. App. 4th 1401, 1408–09 (2012). It is a written statement "made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e)(2). Therefore, to the extent Ultimate's counterclaims are premised on Forever 21's filing suit against Ultimate in this case, they fall within in the purview of the anti-SLAPP statute.

The result is the same with respect to Ultimate's allegations regarding Forever 21's representations in the Confidential Settlement Agreement—which form the basis of Ultimate's rescission and fraud claims. These representations fall within the ambit of the anti-SLAPP statute's protected activity. The Confidential Settlement Agreement in the prior action was entered into between Forever 21 and Ultimate, but

the representations contained in that agreement were obviously an integral part of the resolution of the prior suit. The agreement served as a basis for the Final Judgment and Permanent Injunction entered by this Court, and many of the agreement's terms were memorialized in the Final Judgment and Permanent Injunction. The Court finds that Forever 21's representations in the Confidential Settlement Agreement, which Ultimate's counterclaims now allege were fraudulent, were made in connection with a judicial proceeding and therefore qualify as protected activity under the anti-SLAPP statute. *See Navellier v. Sletten*, 29 Cal. 4th 82, 89–91 (2002) (holding that negotiation and execution of settlement agreement constituted statements or writings "made in connection with an issue under consideration or review by a . . . judicial body"); *GeneThera, Inc. v. Troy & Gould Prof. Corp.*, 1717 Cal. App. 4th 901, 907–08 (2009) (finding that communication of settlement offer in pending litigation directly implicates the right to petition).

Forever 21 attempts to make this same point in its moving papers by discussing the litigation privilege, but the litigation privilege is an issue separate and apart from anti-SLAPP's protected activity. *Flatley v. Mauro*, 39 Cal. 4th 299, 321–22 (2006) (acknowledging a relationship between the litigation privilege and anti-SLAPP statute, but finding that the two are substantively different and serve quite different purposes). Nevertheless, since the Court finds that Forever 21's activities are protected under the anti-SLAPP statute, there is no need to discuss the merits of Forever 21's litigation-privilege arguments.

**2.     Probability of Prevailing on the Claims**

Since the Court finds that Forever 21's activities alleged in Ultimate's counterclaims fall within the anti-SLAPP statute's protections, the burden shifts to Ultimate to demonstrate "a probability that [it] will prevail on the claim[s]." Cal. Civ. Proc. Code § 425.16(b)(1). Since the Court has dismissed Ultimate's counterclaims for breach of contract and unfair competition for failure to state a claim, it necessarily follows that Ultimate cannot establish a probability of prevailing on these claims. *See*

*Vess*, 317 F.3d at 1110. Therefore, the Court need only address the probability of Ultimate prevailing on its rescission and fraud claims.

The details of Ultimate's claims for rescission and fraud have been discussed above. *See* Part IV-A(3). While the Court finds that the claims survive a motion to dismiss, the second-step of the anti-SLAPP analysis is a deeper inquiry that goes beyond just the allegations set forth in the pleading. *Metabolife Int'l, Inc.*, 264 F.3d at 840 (stating that plaintiff must supply admissible evidence to make prima facie showing that it will prevail on the merits of its claims). Ultimate alleges that Forever 21's fraud is based on an intent not to follow through with the promises set forth in the Confidential Settlement Agreement. Ultimate contends that the agreement's terms allow it to continue to purchase Forever 21 garments in the secondary market, and only prevent Ultimate from selling the garments without first ablating Forever 21's marks. But according to Ultimate, the fact that Forever 21 has filed suit again demonstrates that Forever 21 never intended to comply with those terms. The Court finds that is not the case.

Upon review of Forever 21's FAC in this action, the Court finds no inconsistency with Ultimate's understanding of the terms of the Confidential Settlement Agreement. The FAC's allegations against Ultimate are that it has failed to properly ablate the marks as required by the Confidential Settlement Agreement. (*See, e.g.*, FAC ¶¶ 99–100.) Since the allegations in the FAC are not inconsistent with Ultimate's allegations in its counterclaims regarding the terms of the Confidential Settlement Agreement, the Court finds that Ultimate will not be able to prove its fraud claim and will therefore also have no basis for rescission. Accordingly, Ultimate's counterclaims for rescission and fraud fail under the second step of the anti-SLAPP analysis as well.

### 3. Attorneys' Fees and Costs

The Court finds that Ultimate's counterclaims for breach of contract, unfair competition, rescission, and fraud are subject to the anti-SLAPP statute's protections,

and that Ultimate has failed to establish a probability of prevailing on these claims. Accordingly, the Court **STRIKES** the four counterclaims under California's anti-SLAPP provisions. Since Forever 21 has prevailed on its anti-SLAPP Motion to Strike, it is entitled attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.") Forever 21 seeks $5,100 in attorneys' fees and costs. (ECF No. 73, at 20:9–21:5.) Ultimate has raised no objection to the amount sought, limiting its arguments to the merits of the Motion. The Court finds Forever 21's requested fees and costs to be reasonable, and therefore **AWARDS** attorneys' fees and costs in the amount of $5,100.

### 4. Ultimate's Declaratory Relief Claim

The last issue to address is Forever 21's arguments with respect to Ultimate's second claim for declaratory relief. Forever 21 moves to strike this claim as redundant under Rule 12(f). Ultimate seeks declaratory relief regarding its rights and duties under the Confidential Settlement Agreement. (ECF No. 62, at ¶¶ 15–16.) The Court finds that under the Declaratory Judgment Act, Ultimate has presented a valid claim for declaratory relief because there is an actual controversy with regard to the terms of the Confidential Settlement Agreement. 28 U.S.C. § 2201. While Ultimate's separately filed Answer includes defenses to Forever 21's breach-of-contract claim, Ultimate has a right to file a separate counterclaim for declaratory relief. (ECF No. 60.) Accordingly, the declaratory relief claim is not redundant and should not be stricken.

### V. CONCLUSION

For the reasons discussed above, Forever 21's Motion to Dismiss Counterclaims is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 74.) The Court **DISMISSES WITH PREJUDICE** Ultimate's counterclaims for breach of contract and unfair competition. Forever 21's Motion to Strike Counterclaims is also **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 73.) The Court

14

**STRIKES** Ultimate's counterclaims for breach of contract, unfair competition, rescission, and fraud under California's anti-SLAPP statute, and awards Forever 21 $5,100 in attorneys' fees and costs.

**IT IS SO ORDERED.**

February 24, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**