**O**

# United States District Court
# Central District of California

| | |
|---|---|
| FOREVER 21, INC., | Case No. 2:12-cv-10807-ODW(JCGx) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR** |
| NATIONAL STORES INC., *et al*., | **DEFAULT JUDGMENT AGAINST** |
| Defendants. | **BASEMENT CLOTHING USA, INC.** |
| | **[159]** |

## I.   INTRODUCTION

Before the Court is Plaintiff Forever 21, Inc.'s Motion for Default Judgment against Defendant Basement Clothing USA, Inc.  (ECF No. 159.)  For the reasons discussed below, the Court accepts the allegations in Forever 21's First Amended Complaint ("FAC") as true and **GRANTS** Forever 21's Motion for Default Judgment.

## II.   FACTUAL BACKGROUND

Forever 21 is a widely recognized clothing and accessories retailer.  (FAC ¶ 19.)  Forever 21's products are sold exclusively through its own website and retail outlets throughout the United States and numerous other countries.  (*Id.* ¶ 21.) Forever 21's brand is protected through at least twenty federally registered trademarks.  (*Id.* ¶ 23.)  For example, U.S. Trademark Registration No. 2,583,457

was registered on June 18, 2002, and protects "FOREVER 21" for use on or in connection with men's, women's, and children's clothing. (*Id.* ¶ 23(b).)  U.S. Trademark Registration No. 2,873,174 was registered August 17, 2004, and protects "XXI" for use on or in connection with men's, women's, and children's clothing and accessories. (*Id.* ¶ 23(e).)  Forever 21 promotes its brands with millions of dollars of advertising and promotion each year. (*Id.* ¶ 26.)

On August 29, 2012, a Forever 21 investigator purchased allegedly infringing articles of clothing from a store owned by Defendant National Stores, Inc. ("National"). (Pham Decl. ¶¶ 2–4, Exs. A–C.)  These items displayed either a "FOREVER 21" or a "XXI" trademark, and were labeled as "PINTUCK TUNIC TIE." (*Id.*)  Forever 21 investigated the clothing and determined that the items did not originate from Forever 21 and were unauthorized. (*Id.*)

Through discovery from National, Forever 21 traced the PINTUCK TUNIC TIE to Basement via purchase order number 250284. (*Id.* ¶ 5, Ex. D.)  A discovery request to Basement confirmed the PINTUCK TUNIC TIE sale to National. (*Id.* ¶¶ 6–7, Exs. E–F.)  The purchase order indicates that Basement sold National 1,200 of these infringing garments for $4,800. (*Id.*)  Only National was named as a defendant in the original Complaint, but Forever 21 added Basement as well as the other Defendants in the FAC. (ECF No. 35.)  All Defendants—except Basement— have since settled their claims with Forever 21.

Forever 21 asserts the following claims against Basement:  (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) unfair business practices, Cal. Bus. & Prof. Code § 17200; and (5) common law unfair competition. (ECF No. 35.)

Basement filed an Answer on October 31, 2013. (ECF No. 71.)  However, after Forever 21 attempted to conduct some discovery, Basement terminated its counsel and this Court granted counsel's request to withdraw. (ECF Nos. 122,

127.)  In granting the request to withdraw, the Court explicitly warned Basement that a failure to retain new would result in the Court striking the Answer and entering default since a business entity cannot be unrepresented by counsel.  (*Id*.) Basement did not retain new counsel, and on June 19, 2014, this Court struck Basement's Answer and entered default pursuant to Federal Rule of Civil Procedure 55(a).  (ECF No. 142.)  In entering default, the Court noted that the Ninth Circuit has authorized striking an answer and entering default judgment against a defendant who failed to retain counsel after answering a complaint.  *See United States v. High County Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993). Forever 21 filed the present Motion for Default Judgment on June 27, 2014.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) authorizes the Clerk of the Court to enter a party's default in cases where the party has "failed to plead or otherwise defend."  FED. R. CIV. P. 55(a).  Rule 55(b) grants the district court discretion to then grant default judgment against the defaulted party.  *See*, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary.").

Local Rule 55–1 first requires the party seeking default judgment to submit a declaration stating (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (5) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  C.D. CAL. L.R. 55–1.

Generally, the defendant's liability is conclusively established upon default and the well-pleaded factual allegations in the complaint are accepted as true.  *See*, *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per

curiam).  "The district court is not required to make detailed findings of fact" when entering default judgment.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

In exercising its discretion, a court must consider several factors before entering default judgment:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (the "*Eitel* factors").

## IV.   DISCUSSION

### A.   Default Judgment—*Eitel* Factors

The Court finds that the requirements of Local Rule 55–1 are satisfied.  For the reasons discussed below, the Court finds that the *Eitel* factors weigh in favor of Forever 21 and entry of default judgment against Basement is appropriate.

#### 1.   Factor 1:  Possibility of Prejudice to Forever 21

Without a default judgment, Forever 21 cannot obtain relief.  Basement cannot avoid the consequences of its actions by avoiding Court orders.  However, the Court notes that Basement is not a solo actor, nor is it the lone defendant in the case.  Forever 21 has sought relief and settled identical claims with the other Defendants in this action, which may lessen some of the prejudice caused by Basement's default.  Nevertheless, the first factor still favors default judgment.

#### 2.   Factors 2 and 3:  The Merits of the Forever 21's Substantive Claim and the Sufficiency of the Complaint

Factors two and three overlap in substance and are best suited for joint discussion.  These factors focus on the merits of the claims found in the well-pleaded complaint.  Forever 21's FAC asserts five claims against Basement:  (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin, 15

U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) unfair business practices, Cal. Bus. & Prof. Code § 17200; and (5) common law unfair competition.

### a.     Trademark-Infringement Claims

Claims 1, 2, 4, and 5, are all premised on trademark infringement, relying on the same alleged course of conduct: offering for sale and selling, transporting, and distributing counterfeit products.   A claim of trademark infringement may be brought against any private person who, without the consent of the holder of the registered trademark, uses

> in  commerce  any  reproduction,  counterfeit,  copy,  or  colorable imitation of a registered mark in connection with the sale, offering for sale,  distribution  or  advertising  of  any  goods  or  services  on  or  in connection  with  which  such  use  is  likely  to  cause  confusion,  or  to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).   "Neither actual confusion nor intent is necessary to a finding of likelihood of confusion."   *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for a plaintiff injured by false designation of origin:

> (a) Any person who shall affix, apply, or annex, or use-in connection with any goods or services . . . any false description or representation, including  words  or  other  symbols  tending  falsely  to  describe  or represent the same . . . shall be liable to a civil action by . . . any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Infringement claims brought under 15 U.S.C. §§ 1114 and 1125 are subject to the same test; "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to

who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted).   Forever 21's state-law claims under Cal. Bus. & Prof. Code § 17200[1] and common law unfair competition are "substantially congruent to claims made under the Lanham Act," and thus also "require a showing of likelihood of confusion."   *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1089–90, 1111 (9th Cir. 2005) (internal quotation marks omitted).

Here, Forever 21 has alleged that Basement has counterfeited its registered trademarks, without consent, sold the counterfeit products in commerce, and the products are likely to cause confusion, or to cause a mistake or to deceive.  (FAC ¶¶ 48–55.)  Forever 21 also alleges that it suffered harm as a result of Basement's actions.  (*Id.* ¶¶ 56–57.)  The Record indicates that Basement sold 1,200 PINTUCK TUNIC TIEs bearing U.S. Trademark Registration Nos. 2,583,457 and 2,873,174.  Forever 21 properly pleaded that Basement's use of its trademarks "creates a likelihood that the consuming public will be confused as to who makes the product."  *See Jada Toys*, 518 F.3d at 632.  The facts as alleged are sufficient to establish a prima facie case for trademark infringement.  *Eitel* factors two and three weigh in favor of Forever 21 for the trademark-infringement claims.

### b.    Trademark-Dilution Claim

To prove trademark dilution under 15 U.S.C. § 1125(c)(1), a plaintiff must show that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment."  *Jada Toys*, 518 F.3d at 634 (citing 15 U.S.C. § 1125(c)(1))).  "Dilution is the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence

---

[1] Cal. Bus. & Prof. Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (citing 15 U.S.C. § 1127) (internal quotation marks omitted).

Forever 21 alleges that its registered trademarks are famous and distinctive, that Basement has used the trademarks in commerce after the trademarks became famous, and the use of trademarks is likely to cause dilution by blurring and tarnishment. (FAC ¶¶ 73–76.) Since these factual allegations in the FAC are accepted as true, Forever 21 has alleged sufficient facts to establish a prima facie case for trademark dilution. *Eitel* factors two and three weigh in favor of Forever 21 for the trademark-dilution claim.

### 3.    Factor 4:  Amount of Money at Stake

The fourth looks at the sum of money at stake. This factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). While the allegations in the FAC are taken to be true for purposes of default judgment, courts must make specific findings of fact in assessing the amount of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court has discretion to determine the amount of damages to be awarded. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).

Forever 21 is only seeking statutory damages under 15 U.S.C. § 1117(c). As discussed *infra*, statutory damages are permissible and Congress has predetermined the proportional parameters for the Court to exercise its discretion. Therefore, the sum total of damages involved cannot be excessive nor a surprise to Basement. This factor weighs in favor of Forever 21.

/ / /

/ / /

### 4.     Remaining *Eitel* Factors

The remaining *Eitel* factors all weigh in favor of Forever 21.  The fifth factor considers the possibility of dispute concerning material facts.  In Forever 21's Motion for Default Judgment, Forever 21 provided the Court with a sworn declaration from its investigator, photographs of the allegedly infringing clothing bearing Forever 21's trademarks, and a signed purchase order receipt from Basement tying the company to the purchases made at National's store.  Nothing in the Record suggests that there is any dispute of material fact surrounding the infringing clothing.

The sixth factor considers whether Basement's default was the result of excusable neglect.   The Record indicates that Basement was given ample opportunity to obtain new counsel in this litigation.  Instead, it chose to disregard the Court's orders.

The seventh factor requires this Court to consider the strong policy favoring a decision on the merits.  While the Court would prefer to resolve this matter on the merits, Basement's actions have left the Court with no other option.   The availability of statutory damages, which would most likely be the same damages recovered should this matter proceed to the merits, mitigates any reluctance to enter default judgment.  Thus, factors five, six, and seven all weigh in favor of entering default judgment against Basement.

The Court finds that default judgment is appropriate based on the *Eitel* factors discussed above.  Accordingly, the only remaining issues to resolve are Forever 21's available remedies.

### B.     Remedies

Forever 21 requests statutory damages, a permanent injunction, and attorneys' fees and costs.  In determining damages, a court may rely on the declarations submitted by the plaintiff.  Fed. R. Civ. P. 55(b)(2).

/ / /

### 1.     Statutory Damages

Forever 21 has elected statutory damages under 15 U.S.C. § 1117(c).  (ECF No. 159.)  Section 1117(c) provides that in cases involving counterfeit marks the plaintiff may elect to recover statutory damages in lieu of actual damages and profits.  Statutory damages under § 1117(c) are assigned as follows:

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Forever 21 has requested statutory damages based on Basement's allegedly willful infringement of seven of Forever 21's trademarks.[2]  (ECF No. 159).  But the Court finds that Forever 21 has failed to establish Basement's willfulness.  Furthermore, the Court has only been presented allegations and evidence of Basement's infringement on two trademarks.

According Forever 21, its investigator purchased two infringing items from National's Van Nuys, California store on August 29, 2012.  (Pham Decl. ¶¶ 2–4, Exs. A–C.)  In addition, discovery with National revealed that Basement sold 1,200 infringing items to National for $4,800.  (*Id.* ¶¶ 6–7, Exs. E–F.)   The only registered trademarks implicated are the "FOREVER 21" and "XXI" marks.  The Court finds no evidence that Basement infringed five other trademarks belonging to Forever 21.

The Court has discretion to determine the amount of statutory damages to award pursuant to 15 U.S.C. § 1117(c).  Statutory damages are awarded per "type

---

[2] Forever 21 actually requests the astronomical sum of $14,000,000 for Basement's infringement, which for this case is nowhere in the realm of consideration for the Court.

of goods" and not per individual item bearing the counterfeit mark.  *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:95 (4th ed. 2009).  The record supports a finding that Basement has infringed on two of Forever 21's trademarks in a $4,800 sales transaction.  In exercising its plenary discretion, the Court notes that Basement is one of numerous parties involved in selling counterfeit goods.  Basement's role in this larger scheme to infringe Forever 21's trademark is unknown, but the record tends to suggest that Basement's role was that of a *de minimus* middleman.  The Court hesitates to find that Basement's actions were willful based on its role as a middleman.  The Court also relies on the photographs of the infringing products supplied Forever 21, which appear to show that Basement at least made an effort to ablate Forever 21's marks.  (Pham Decl. Exs. A–B.)

Based on the above, the Court finds that a statutory damages award of $2,400 per mark—for a total damages award of $4,800—is reasonable.

### 2.    Injunctive Relief

Forever 21 seeks to permanently enjoin Basement from engaging in any further trademark infringement, false designation, unfair competition, or dilution. (ECF No. 159.)  The Lanham Act gives the Court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [the Lanham Act]."  15 U.S.C. § 1116(a).  The Court finds that injunctive relief is an appropriate remedy.  Forever 21 suffered irreparable harm, and while monetary damages can compensate for some of the injury, the potential for future harm still exists.

### 3.    Attorneys' Fees and Costs

Forever 21 also seeks attorneys' fees.  Section 1117(a) provides the Court with discretion to award reasonable attorneys' fees in "exceptional cases."   15

U.S.C. § 1117(a).  "A trademark infringement is viewed as 'exceptional' under § 1117(a) when the infringement is malicious, fraudulent, deliberate or willful." *Rolex Watch*, 179 F.3d at 711.  Moreover, a defendant's failure to defend an action is one factor that courts may consider in determining whether the defendant's conduct was willful for purposes of attorneys' fees.  *See*, *e.g.*, *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1204 (C.D. Cal. Mar. 2, 2012).

The Court finds that attorneys' fees and costs are appropriate in this case. Pursuant to Local Rule 55–3, Basement is entitled to attorneys' fees in the amount of $680 as well as costs to be evidenced by a bill of costs.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Forever 21's Motion for Entry of Default Judgment.  (EFC No. 159.)   A permanent injunction and default judgment will issue separately.

**IT IS SO ORDERED.**

August 11, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**